Good morning, Your Honors. May it please the Court, I am Albert Tang with the law firm of Bottini & Bottini in San Diego. I am arguing this appeal on behalf of Plaintiff Appellant Kusumam Koshy. We raise three issues in this appeal, statute of limitations, demand futility and leave to amend. With regard to statute of limitations, the District Court was wrong to charge Ms. Koshy with inquiry notice in July 2012 when QSI stock price dropped after a curative disclosure occurred. The District Court was wrong because the stock price drop triggers inquiry notice only with respect to the securities fraud claim, but not with respect to a shareholder derivative claim. As held in Bader v. Anderson, and I'm quoting what the California Court of Appeals wrote, quote, a derivative lawsuit is in essence a consolidation in equity of two suits, one by the shareholder against the directors seeking an order that they sue those who have wronged the corporation, and the other by the corporation against wrongdoers. Here, the inquiry notice for board liability or bad faith misconduct was not there in July of 2012. I would like to remind the Court that even after the securities fraud class action was filed, the District Court itself, in October 24, 2014, issued an order dismissing the securities fraud class action. In other words, at the time, the District Court found that there's not enough fact to find scienter or bad faith conduct. Well, you relied on our court's decision reversing the dismissal of the securities fraud action as somehow adding something to the mix, and I guess I still don't quite understand the theory behind that. Because obviously, our court could not contribute any new facts to the world. All we did was rule in the legal sufficiency of allegations that were presented in a complaint filed years ago. That's right. Our contention is this, that those operative facts relied upon by the panel of this court only gave inquiry notice with regard to whether those facts constitute bad faith conduct, and as a result, the board liability is implicated. It is not fair to any other shareholder within the facts before the issuance of the July 2017 panel decision. Before that time, no shareholders should be charged with inquiry notice. I guess I'm not even asking. I'm just asserting that our court's decision did not change anything in terms of the facts that were available to your client. Yes. Do you agree with that? Yes. You're the ones who are relying on the – our court's decision as somehow changing the state of play, and I don't understand how that could even theoretically be possible. Because only after a panel of this court ruled that there was bad faith misconduct at that time. We did not. We ruled on the sufficiency of a set of factual allegations that were already in the world years and years ago. That's right. But those facts gave rise – the panel of this court held that those Sienter implicates bad faith conduct on the part of Raison, who was the chairman of the board, Holt, chief financial officer, and Ptushoky, who was the chief wrongdoer at the time. So you needed our court to tell you that those facts added up to Sienter under the federal securities laws before you knew to file this action? That this doesn't make any sense to me. Not really, but the point that we're making here is that when a district court, based on the same sets of facts, did not even find Sienter, it is not fair to charge a shareholder in the public to the knowledge of bad faith misconduct on the part of the board. It seems to me that what you're trying to get me to do is parse my law. And so I tried to find out what my law is as it relates to this discovery exception, which is the only way you get in here. If I look at what my law is, it says under the discovery rule, this is Fox at 920, the suspicion of one or more elements of a cause of action coupled with knowledge of any remaining elements will generally trigger the statute of limitations, period. Then it says under Jolly, this is at 928, we look to whether the plaintiff had reason to at least suspect that a type of wrongdoing has injured her. In other words, a plaintiff need not be aware of the specific facts necessary. Once the plaintiff has a suspicion of wrongdoing and therefore an incentive to sue, she must decide whether to sue or sit on her rights. So long as the suspicion exists, it is clear the plaintiff must go find the facts. She cannot wait for the facts to find her. Now, it seems to me that your answers to my good colleague's question, which I mean, I had right in here, this was the question I was going to ask you. What new facts were revealed in our opinions in securities class action that would put you on notice of these claims? That was my question. If I apply this standard, his question is pretty straightforward. There's not one new thing. And if you, your client, need not be aware of specific facts, but has a suspicion of then must go out and get after it. She can't sit and wait for the facts to come back. And that's exactly what the district court found. And that's what I'm worried that I have to find. Because that's my standard. We disagree with that exactly because the answer to your question. Well, you can't disagree. It's jolly. It's the one I have to apply. You can't disagree with that. You have to find facts outside of that in order to get your, in order to win. Well, two points in response. First, the facts are facts. The interpretation of those facts, whether those facts gave rise to an inference of Ciancio or Bathe-Faith misconduct, the district judge disagreed, a panel of this court disagreed. It's not fair. Again, especially in the context of a statute of limitations, which is an equitable doctrine, that you cannot charge a shareholder in the public with reasonable inquiry notice just because those same facts was held by the district court to not to give a fair inference of Ciancio. And in addition to that, and that's the catch-22 situation that has been created by district courts in this circuit, we, the district court here held that we filed a lawsuit too late, only after the Ninth Circuit upheld the pleading sufficiency of the securities for all class action complaint. In another case that I personally litigated in the Southern District of California, the district judge, this presiding over both the securities for all class action, just like the district court here, and the derivative lawsuit, where I was plaintiff's counsel, the district judge dismissed the securities for all class action complaint for failure to plead, lost causation in Ciancio. And then, even after finding that my client had sufficiently pled demand facility under stringent rules of 23.1, the district judge granted judgment on the pleadings on Article 3 rightness doctrine, holding that because the securities for all class action complaint was dismissed. There's no injury to the corporation. And as a result, my related security, I'm sorry, my related derivative lawsuit was unripe because there's no damages. So, this is exactly the catch-22 situation that's created by the orders below here. We, in the Southern District of California, in another case, we faulted for filing a case too early because the damages to the company resulting from the securities for all class action was unrealized at the moment. So, on top of that, and we disagree with this idea that we have to win on the discovery rule because we also raised an issue of equitable atoning. In Hatfield v. Halifax, there are only three elements of equitable atoning, tiny notice to the defendant in the founding of the first suit, lack of prejudice to a defendant gathering evidence, and then the third element is good faith and reasonable conduct. Now, the only disagreement here is that whether, is element number one, whether my client will have to be the same plaintiff who filed the first case. In this context, we think that the fouling of both the securities for all class action and the related earlier filed shareholder derivative lawsuit told the limitations period. There's no case law defendants have cited none that requires that my client was the plaintiff who filed either the first class action or the shareholder derivative lawsuit. And defendants do not contest elements two and three. And we have submitted those cases in our briefs. We believe that American pipe, the equitable atoning under American pipe under Rule 23 squarely applies to the Rule 23.1 context. Could you maybe, just since your time is running down, speak to the one aspect of your claim that's not barred by the statute of limitations regarding the separation agreement? Sure. Sure. With regard to the separation agreement on the demand fertility inquiry, we think that the district court's wrong because the district court complimentalized our demand fertility allegations and only on page 18 of the district court's order, only analyzed the set of the demand fertility allegations in the district court's view relating to the separation agreement. We think that is wrong because Rosenblum sets forth three rules in the demand fertility inquiry. The first one is that you have to consider all the allegations as a whole in a context rich fact specific inquiry. The district court did not do that here. We allege that Rosen, the founder and the majority, not majority, I'm sorry, 16% shareholder of the company, had the ability to remove board members, to force out officers without board approval in 2004, in 2010, and in 2012, also form a special committee. In that regard, all those allegations will have to consider as a whole, to be considered as a whole. And Rosen lacks independence and all the board members are also beholden to Rosen because they know if they cross Rosen, they will be fired. Their argument, though, is that if this decision to grant him the separation agreement is protected by the business judgment rule, then none of the directors have any liability, so not Rosen, not anyone else. So it seems to me your main task here would need to be to persuade us that they're just wrong about this decision being obviously protected by the business judgment rule, right? A couple of points. One, we think that the agreement violates the business judgment rule in a way that we're talking about Pachocki, who has been found to have committed securities fraud with Sienter, who has sold 87% of his stock holdings during the relevant period, ripping about close to $4 million in proceeds. Under these circumstances— Okay, but your view is that responsible directors in this situation, rather than granting him this favorable separation agreement, would have just fired him for cause? Yes, definitely. So what would he have obtained if he had been fired for cause? Do we know that? Because I could not find that anywhere in the record. In addition to this terminating Pachocki for cause, we think that the board should have pursued claims against him rather than— Well, they preserved their right to do that, at least with respect to fraudulent and criminal activity, I think, right? On top of it, though, the separation agreement also granted him at least 20,000 shares of stock and plus some $600,000. That's why I'm asking, what would he have received instead if he had been terminated for cause? Don't you have to have that as the baseline so that we can do a comparison to see how irresponsible this decision was? That is a fact. The answer to your question will not be in the record, and I don't— The answer is what? We don't know. I don't know. I cannot— Isn't that the question? That's why I thought the question was good. Don't you have to plead that? Isn't that part of your pleading? My pleading is that— I mean, you've got to plead this. That's what we're on right here. Well, if the panel holds that, we'll have to plead those facts, and obviously we also raise an issue about leave to amend. And in this case, I have been exclusively practicing securities law for 15 years, and I cannot tell you there's another case where the initial complaint was dismissed without leave to amend. So what would you add? What new fact would you add? Whatever fact said, this Court just now just whoppers the question, raises the fact that we— But you don't know the answer to that question, I take it? Obviously, we can investigate and plead that to the extent we can, and on top of it, there could be equitable tolling facts— You want us to give you leave to amend, right? Yes. That's one of your requests, that we should give you leave to amend. Yes. What would you say? Well, there are several ways to go about it. Why should we give you leave to amend if you don't know what to say? Well, to the extent that this—in the event that this panel holds that we didn't have enough facts to plead to amend facility, we can propound a shareholder inspection demand to get documents and more information about board knowledge with respect to the underlying wrongful conduct. You can't get discovery before you have a good complaint? I'm sorry, I missed the question. You can't get discovery before you have a legally sufficient complaint? That is not correct with regard to California law. This is a California, not a Delaware corporation. To the extent that there's a pre-motion to dismiss discovery bar in Delaware, our position is that that's inapplicable in this context. It's a matter of federal law. You're pleading in the federal court. Pleadings are governed by federal law. Well, I have two responses to that. First, shareholder inspection demand is considered not discovery. Two, under the scheme of a federal civil procedure, we submit that we have a right to discovery even before sufficiently pleading demand facility. My worry about this is the one that my good colleague has essentially asked you. The only argument I saw that you made on this is that you could cure any pleading defects remanding regarding demand futility by inspecting the books and records. But when asked about what it is you're going to give, nobody knows. We do know, for example, a typical- I mean, that was the only argument you made in the district court. We're going to look at the books and records and we'll come up with something. It sounds like a fishing expedition. You didn't give any precise information to the district court about what you'd allege. We could not at that moment because we did not propound the shareholder inspection demand. Typical shareholder inspection demand would allow me to at least the board books and the records of the relevant period and those materials would reflect board knowledge of the underlying misconduct that we allege. Okay. Counsel, you're well over your time. We'll give you a couple minutes in rebuttal, but why don't we hear from your opponents right now? Great. Thank you. Thank you, Your Honors. Good morning. Michelle Johnson for the defendant at police, Quality Systems Incorporated and the individual defendants. On the statute of limitations issue, the court obviously found that three of the categories of alleged misconduct were barred by the statute of limitations just based on looking at the complaint. These underlying activities occurred in 2012, the latest 2013. The complaint was filed in 2017. As Your Honors were asking about, nothing in the Ninth Circuit order reversing the district court's opinion on the underlying motion to dismiss in the securities case added any facts. They couldn't. And my esteemed colleague referred a number of times to a finding of Scienter that Mr. Blahutsky had been found to commit securities fraud with Scienter and that is not accurate at all. It was a ruling on the pleadings, of course. The motion to dismiss in the securities case had argued about forward-looking statements and the district court found that a number of the statements that were challenged about revenue projections, et cetera, were forward-looking and that others were puffery. The Ninth Circuit's opinion disagreed and said, no, some of those forward-looking statements are mixed and thus didn't have the right cautionary language. That was the nature of the Ninth Circuit's opinion. It added nothing to the facts that existed at the time, July of 2012 as late as January 2013 on this indemnification agreement argument. The Ninth Circuit, incidentally, didn't even reach those other categories of alleged facts. It was just about the challenged statements that were talked about on July 26, 2012 and then led to the stock drop. That's the only thing the Ninth Circuit even addressed. These other claims about the indemnification agreement, the separation agreement, the compensation, the trading were not even addressed. So nothing new could have been added about those claims. So when Your Honor referenced the Fox case and the Jolly case on the discovery rule, there not only were the facts out there, but there were three prior complaints articulating the theories. We're talking about the securities class action, the Hussein action, and the Foss derivative action. Correct. And so those three actions together not only talked about the facts, they articulated the claims for breach of fiduciary duty against the board. Is there, how extensive is the overlap between the facts alleged in, let's say, the prior derivative action and this one? Is it like 100 percent or something close? It's close. So as to the challenged statement claims, it's 100 percent. This plaintiff added the indemnification agreement, very ordinary corporate action of entering into indemnification agreement. This plaintiff added that that was somehow breach of fiduciary duty and then added the Plohutsky separation agreement, which was later, which we can talk about later. Other than that, it was identical. And all of the allegations about the directors raised in, he talked about the proxy contest in 2004, 2010, 2012, all of that was lifted from the Hussein complaint. So it was all out there, nothing new. As to the insider trading, that was under Foss, right? That was in Foss. It was in the securities case. It was in Hussein as well, actually, alleging that February 2012 trading. The interesting piece of, I think, this issue jurisprudentially is the case that my colleague brought up in the Southern District of California that found that the claims weren't ripe. He's referring to the Bofi case. It's now on appeal, actually, to this court. Not all derivative cases are the same. The complaints in this case, in Bofi, in others who have looked at this ripeness question, they're different. What you need to look at is what was the injury alleged. In Bofi, the court found, the Southern District of California found that the claims weren't ripe because the complaint alleged damage from the costs to prosecute the securities case or outcome of the securities case. There was a link between the alleged injury and the outcome of the securities case. If you read the complaint in this action, there's no mention of that whatsoever. How would the injury to the corporation depend upon the outcome of the securities fraud action? I don't understand that. I agree with you. That was alleged and sometimes is in derivative cases. I would challenge that myself if that were my case, but that is what the allegation was. And the court said, well, that sounds like an indemnity. If somehow there's a bad outcome and the director should be liable for it, you have to have the bad outcome before you can see indemnity. There's nothing to do with the allegations here, which do not say that. They allege injury based on the stock drop, other unarticulated breaches of fiduciary duty injury, clawback of the compensation. Unarticulated damages coming from the indemnification agreement. Those are not the type of claims that were at issue in both fees. So there's no inconsistency there, although it is an interesting issue. On equitable tolling, I think they're under the case, council said we didn't cite any case that says that the identity of the plaintiff has to be the same. Every case that both sides cited on the issue of equitable tolling, every case had the identity of the plaintiff be the same. There is no case that has said you can lie and wait and see what happens with the cases that are being prosecuted by someone else. And then later decide actually my case was equitably tolled by the existence of those cases. I have a question that is going to expose my, is going to embarrass me. Because we had another case involving a derivative action earlier in the week. And I can't remember if I'm getting the facts confused. But in this case, did this plaintiff try to get her action, her or his? Her. Her. Action consolidated with that pending derivative actions? She did. Okay, and she was told no. Correct, because it was so late. Okay, but then that person then gets the action dismissed and doesn't appeal? Correct. It just seems unfair that that one shareholder can, even though now there's someone else who's saying, no, no, no, let me in, I'm willing to prosecute this. And so that strikes me as a little unfair. Even if they had been consolidated, there would still be two plaintiffs and two cases that they would be consolidated as a shareholder derivative action against this company for purposes of prosecution. But that wouldn't have changed the statute of limitations arguments. That wouldn't have changed the equitable tolling arguments. That wouldn't have made the identity of the plaintiffs become the same. But wouldn't, if the actions had been consolidated, couldn't she have then prosecuted the appeal from the dismissal? Possibly, sure. But that doesn't change. Then we would be here talking about demand futility, because that case was dismissed on demand futility. Right. That piece of it, there would still be those two pieces. Unless, I guess, your honor is asking whether there would have been a consolidated complaint demanded, and therefore, we can speculate what that would look like. Well, I just, she would have avoided the statute of limitations bar, at least in terms of being able to prosecute this appeal. That's what's happened now. Because she was shut out of the timely action, and those people, for whatever reason, decided, nah, we're just not even going to bother trying to appeal the dismissal, she's now left out in the cold, and the potential injury to the corporation goes completely unremitted. Depending on what the amended complaint would have looked like. I think having her be able to prosecute those claims, we would just be on a different appeal on the demand futility issues. Because they weren't consolidated, nobody appealed the denial of consolidation, which maybe isn't even possible. But because they weren't consolidated, rightly or wrongly, we say rightly, the identity of the plaintiff is different. I would submit the identity of the plaintiff would be different anyway, for equitable tolling purposes, it would just, to your point, she would be subbed in as the person to prosecute that case. Again, that case was dismissed on demand futility, which we should talk about. I was going to say, that case really came down to demand futility, correct? Correct. So really wouldn't necessarily have, this is my thought, and I'll show my bad, as Judge Wofford readily admitted. Doesn't seem to me it has anything to do with the statute of limitations on these other claims except the demand futility, right? The Foss case? Yeah. Correct. Correct. It was timely filed. It was filed back in the day, which if counsel's position is correct, it would change the jurisprudence on every derivative case that exists. Because all of them are filed fairly close in time to the securities case. Many of them are filed. And this rule would say, well, none of them can go forward, and they all have to wait for years and years and years. So the Foss case was timely filed, but did not allege demand futility, did not allege particularized facts, giving rise to a reasonable doubt that these directors could exercise their business judgment, and that they were disinterested and independent. The reason applies here, if we can segue, to the allegations about the separation agreement. There are nine people on the board at the time this case was filed. Five of them were not on the board when this underlying activity took place. So even putting aside whether the separation agreement is protected by the business judgment rule, they could not possibly face individual non-exculpated liability for an action where they were not on the board. Yeah, but they say that, well, let's say though that Raisin, is that how you say his name? Yes. Was potentially liable and had every incentive to avoid having an action brought that would expose that. And they say that a number of these other board members, at least, are totally beholden to him. And so they're not independent in that respect. And I would say there's no allegation that Raisin would bear personal liability for the separation agreement, but assuming he would. Well, but that's why it just comes back to whether, in fact, the decision was or was not protected by the business judgment rule, right? Correct. All of the allegations about Raisin supposedly having control over the board and others being beholden, all of those allegations predate 2013. That's not this board. These board members are new. There is no allegation, zero allegations, that these directors are beholden to Raisin or that he has any power over them or that they would. So we shouldn't grant leave to amend? Is that your point? Correct. We should not grant leave to amend. The plaintiff has been unable to articulate any change, any amendment that would solve the demand futility, that would solve the statute of limitations. Do you write that he can get access to the books and records of the company? I would say California law is mixed on that point. Some courts say, no, you can't get in there before the pleadings are decided in a demand, in a derivative case. There are California courts who have allowed it under that Section 1601 shareholder demand. But the demand has to be narrowly tailored to the alleged reason for seeking. So it's not a fishing expedition that opens up the corporation to any kind of discovery. It has to be narrowed. An example of documents that have been allowed to be produced early are board minutes. That's not going to change any of these allegations. It's not going to solve demand futility. It's not going to show that these directors, who are new, had any knowledge of things that happened before they were on the board, or any knowledge of raisins activities before they were on the board. He wants to sue the new board members for not bringing an action to claw back the extra money given on the separation agreement. And he says he doesn't have to give a demand. Right. And has not alleged, to your point, and has not alleged that there would be any different compensation or structure or granting of shares or granting of health care benefits if he had been fired for cause. Contractually speaking, we don't know, based on the pleadings, that there's any difference that would have changed his compensation and led to a different separation agreement. It is the classic, if I can say that, exercise of business judgment for a board to decide compensation of an executive and compensation of a departing executive. So there's no allegation that could possibly bring that outside of the business judgment rule and into demand futility. On American pipe tolling, just quickly, since I skipped over that a little bit, that says only, it has been enforced only in the class action context. And there are no cases that extend it to a derivative case. That would be a big change in American pipe jurisprudence. And I just wanted to make sure I addressed that point, because he said it should be extended to derivative plaintiffs, but it never has been before. Okay. Thank you, counsel. I appreciate your argument. Two minutes for rebuttal. Thank you, your honors. I'll be brief. Let me address this notion of the discovery rule. If you look at Bader, one of the most progenist and actually very few demand futility cases from California on California law, on California corporation on demand futility, Bader was a role from appeal that's from the fourth amended complaint where discovery was allowed in the trial court below. Now, with regard to this idea that all the board members are new now and the allegations about Raisin's control and domination arose from events from 2004 and 2010, and that goes into the argument that all of these allegations must be considered as a whole. And the fact that Raisin has control for a long, long time, actually 40 years as chairman of a company, actually supports our argument that the new board members are also, they also knew that if they cross Raisin, they would be fired. They knew what? If they did anything that harms Raisin's interest, those board members cannot stay. And that's borne out by the events that took place in 2004, 2010, and 2012. Often Raisin formed special committees without board approval, fired officers and directors at will. Okay. Thank you, counsel. Appreciate the arguments. The case just argued is submitted.
judges: N.R. Smith, Watford, Hellerstein